## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT COURT OF PENNSYLVANIA

EMILIO ROMERO,  :
    Plaintiff  :
          :   CIVIL ACTION 3:19cv1038
          :
v.          :
          :
TOBYHANNA TOWNSHIP, PA   :
    &       :
CHIEF OF POLICE CHRIS WAGNER   :       **FILED**
    &       :       **SCRANTON**
DETECTIVE LUCAS BRAY   :       JUN 1 9 2019
    &       :
DETECTIVE MARK WEBB   :       PER _____ /DEPUTY CLERK

### COMPLAINT

### PRELIMINARY STATEMENT

1.   This is a civil rights complaint brought under 42 U.S.C. Section 1983 and raising

supplemental state-law claims concerning the actions of the Defendants, Detective

Lucas Bray and Detective Mark Bray in arresting and charging Plaintiff with a crime

without any legal or factual basis.    The actions and conduct of Defendants, Bray and

Webb, are the result of a policy, practice, custom and deliberate indifference on the

part of the Defendant Tobyhanna Township, Pennsylvania and Pocono Mountain

Regional Police Chief of Police, Chris Wagner.

### JURISDICTION

2.   This Court has jurisdiction over the subject matter of the Complaint under 42

U.S.C. Section 1983 and 28 U.S.C. Section 1331, 1343(a)(3), 1343(a)(4) and

1367(a).

-1-

**PARTIES**

3.     The Plaintiff, Emilio Romero, is and was at all relevant to this Complaint, a resident of Tobyhanna Township, Pennsylvnaia.

4.     The Defendant, Tobyhanna Township, Pennsylvania is a municipality in the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls in concert with other local municipalities, the Mount Pocono Regional Police Department.

5.     The Defendant, Chief of Police Chris Wagner, is and was at all times relevant to the Complaint a resident of Monroe County, Pennsylvania and was acting in the capacity as the Chief of Police of the Mount Pocono Regional Police Department under color of state law.    He is sued in his individual and official capacity, as the Chief of Police of the Mount Pocono Regional Police Department.

6.     The Defendant, Detective Lucas Bray, is and was at all times relevant to this Complaint a resident of Monroe County, Pennsylvania and was acting in his capacity as a Detective/Corporal in the Mount Pocono Regional Police Department under color of state law.    He is sued in his individual and official capacity.

7.     The Defendant, Detective Mark Webb, is and was at all times relevant to this Complaint a resident of Monroe County, Pennsylvania and a Detective in the Mount Pocono Regional Police Department, acting under color of state law.    He is sued in his individual and official capacity.

8.     Tobyhanna Township, Pennsylvania is under a duty and responsibility to run its policing activities in a lawful manner so as to preserve for its citizens the rights, privileges and immunities guaranteed and secured to them by the Constitution

and laws of the United States, and the Commonwealth of Pennsylvania.

9.    Tobyhanna Township, Pennsylvania established or delegated to the Defendant, Chief of Police Chris Wagner, the responsibility for establishing the implementation of policies, the practices, procedures, or customs used by law enforcement officers employed by Tobyhanna Township, including Defendants Detective Lucas Bray and Detective Mark Webb, regarding the determination of probable cause for arrest, the issuance of criminal complaints and the initiation of criminal prosecutions.

10.    Each and all of the acts of the individual Defendants involved in this incident performed under the color and pretense of the Constitution, statutes ordinances, regulations, customs and uses of the United States of America, Commonwealth of Pennsylvania,Tobyhanna Township, Pennsylvania, were under the color of law and by virtue of their authority as law enforcement officers and prosecutors and the course and scope of their employment with the Mount Pocono Regional Police Department and District Attorney of Monroe County, Pennsylvania.

**FACTUAL ALLEGATIONS**

*Procedural History of Criminal Case*

11. On June 24, 2017, the Plaintiff, Emilio Romero, was arrested and charged with Rape by Forcible Compulsion, 18 Pa.C.S.A. Section 3121(a)(1), Involuntary Deviate Sexual Intercourse by Forcible Compulsion, 18 Pa.C.S.A. Section 3123(a)(1), Aggravated Indecent Assault without Consent, 18 Pa.C.S.A. Section 3125(a)(1), Possession of Device for Intercept Communications, 18 Pa.C.S.A. Section 5705,

Intercept Communications, 18 Pa.C.S.A. Section 5703, Invasion of Privacy, 18

Pa.C.S.A. Section 7507, Simple Assault, 18 Pa.C.S.A. Section 2701(a)(3), Terroristic

Threats with Intent to Terrorize Another, 18 Pa.C.S.A. Section 2706(a)(1),

Possession of an Instrument of Crime, 18 Pa.C.S.A. Section 907 and lesser included

offenses, for allegedly stalking and ultimately raping his wife, Erika Jones.

12. On June 24, 2017, Plaintiff was arraigned, bail was set at Two Hundred

Thousand Dollars, and Plaintiff's preliminary hearing was scheduled for June 28,

2017.

13. On June 28, 2017, Plaintiff's preliminary hearing was continued until July 5,

2017.

14. On July 5, 2017, Plaintiff was held for court on all charges, with the exception

of IDSI, Aggravated Indecent Assault, and Possession of an Instrument of Crime,

following a preliminary hearing presided by Monroe County Magisterial District

Court Judge, the Honorable Anthony D. Flugel.

15. Following Plaintiff's preliminary hearing, Judge Flugel increased Plaintiff's bail

to Five Hundred Thousand Dollars ($500,000.00), pursuant to a Commonwealth

motion to modify bail, and scheduled Plaintiff's Court of Common Pleas

arraignment for August 23, 2017.

16. On August 23, 2017, Plaintiff was arraigned and a pre-trial conference was

scheduled for October 18, 2017, before Monroe County Court of Common Pleas

Judge, the Honorable Jonathan Mark, fifty-six days non-excludable.

17.   On October 16, 2017, the Commonwealth filed a motion for a continuance.

18. The Court granted the Commonwealth's request for a continuance and

rescheduled the Pre-Trial Conference and Discovery hearing for November 22, 2017.

19.   On November 22, 2017, the Pre-Trial Conference and Discovery hearing were convened after which the final call of the list and trial were scheduled for March 2, 2018.

20.   On February 28, 2018, Plaintiff requested a continuance.

21.   On March 2, 2018, the Plaintiff's request for a continuance was granted and the final call of the list and trial was rescheduled for April 2, 2018.

22.   On March 27, 2018, the Plaintiff requested a continuance of the April 2, 2018 and filed a motion for nominal bail, which the Court scheduled for April 10, 2018.

23.   On April 10, 2018, the Court denied Plaintiff's motion for nominal bail but granted Plaintiff's continuance, and placed the matter on the July Call of the List, June 29, 2018.

24.   On May 25, 2018, the Plaintiff requested a continuance which was denied as moot by the Court on June 1, 2018.

25.   On June 19, 2018, Plaintiff filed a motion for continuance which was granted resulting in the case being scheduled for the August 31, 2018, final call.

26.   On August 31, 2018, the Court denied Plaintiff's motion for court appointment psychiatrist, with prejudice, and motion in limine, without prejudice to be raised at time of trial.

27.   On September 20, 2018, the Court scheduled the case for the final call of November 30, 2018.

28.  At the call of the list, Plaintiff's trial date was scheduled for December 10, 2018.

29.  Following a jury trial, on December 14, 2018, Plaintiff was found not guilty of Rape Forcible Compulsion, (F1), IDSI Forcible Compulsion, (F1), Sexual Assault, (F2), Terroristic Threats with intent to Terrorize Another, (M1), Simple Assault, (M2), and False Imprisonment, (M2), but found guilty of Criminal Use of a Communications Facility, (F3), Intercept Communications, (F3), Possession of Device for Intercept Communication, (F3), Possession Instrument of Crime, (M1), Intentional Possession of a Controlled Substance, (M), Invasion of Privacy, (M2), and Tamper with Fabricate Evidence (M2).

30.  Plaintiff's sentencing date, which was originally scheduled for February 26, 2019, was postponed and rescheduled for April 30, 2019.

*Factual Circumstances Underlying Plaintiff's Arrest*

31.   On June 22, 2019, Erika Jones, made a 9-1-1 call to the Mount Pocono Regional Police Department, to report that she had been raped by her husband the Plaintiff, Emilio Romero.

32.  Shortly, thereafter, Ms. Jones was interviewed in her home, by Detective Scott Dunlap and Corporal Mertz of the Mount Pocono Police Department.

33.  Ms. Jones relayed the following account.

  A.  During the early evening of June 21, 2017, at approximately, 8:30 pm, the Complainant, Erika Jones, was home with the Defendant and their seven year old daughter Brianna Romero, when she discovered a camera pen in her bedroom.

  B.  The Complainant began arguing with the Defendant, who was standing in the

hallway just outside of her bedroom.

C.  Eventually the Complainant stepped out of her bedroom to walk to the bathroom, when she was immediately accosted at gunpoint by the Defendant.

D.  The Defendant put the firearm, which was big and black, to the Complainant's head and forced her back into the bedroom, as he threatened to kill her.

E.  After making repeated threats to kill the Complainant, Defendant put the gun to the back of Complainant's head, which was separated from the gun by a pillow and pulled the trigger.

F.  The gun didn't fire, at which time Defendant told the Complainant that she "was lucky that time."

G.  Defendant then ordered the Complainant to disrobe, while pointing the gun at her, as Complainant begged him to stop.

H.   At some point, Defendant went to go check on their daughter, Brianna, who was texting the Complainant as the ordeal unraveled.

I.  When Defendant left her bedroom, the Complainant locked the door and pretended to call the police.

J.  Moments later, Defendant busted the Complainant's door down, re-entered the bedroom where he threatened to hit Complaint with his gun, then took her clothes off and began raping her, as the Complainant cried.

K.  At some point Defendant began recording the rape on his phone, then turned her around and raped her from behind, while threatening to penetrate her anus.

L.  Eventually, Defendant ejaculated inside the Complainant's vagina and let her go.

34.  Detective Dunlap and Corporal Mertz also interviewed the Plaintiff's seven year old daughter Brianna Romero, who corroborated her mother's account of the incident, including Defendant's possession of a big black handgun.

35.  The Defendant, Detective Lucas Bray, obtained and executed a search warrant for the home, which resulted in the discovery of a black beretta replica handgun that was locked in a small safe in Plaintiff's bedroom, several pieces of covert recording devices, the camera pen, Erika Jones' panties, and male sexual performance enhancing drugs.

36.   Later that day, Defendant Bray issued an arrest warrant for the Plaintiff.

M.  Incident to Defendant's arrest, police recovered a cellular phone, which was eventually subject to a forensic search that resulted in recovery of the video of Defendant allegedly raping the Complainant.

37.  The Complainant was treated at St. Luke's Hospital in Bethlehem, Pennsylvania, where a rape kit was performed and Complainant was interviewed by medical personnel about the incident.

38.  The account of the incident given by Complainant at St. Luke's was similar to the version she told police.

39.  The following day, June 23, 2017, Defendant Bray was able to reach Plaintiff by phone, who told Defendant Bray that his wife, Erika Jones, made false allegations against him, because he reported her to Children and Youth Services for neglect of their daughter, Brianna, and she was expecting the Children and Youth Services representative to come to their home and interview her on June 22nd, the same day that she reported the alleged rape.

40.  After further discussion Plaintiff and Defendant Bray agreed that Plaintiff could turn himself in the next day, Monday, June 24, 2017.

41.   The next day, before Plaintiff met with Defendant Bray, Officer Smelas, Sergeant LaRue and Officer Steidel of the Mount Pocono Police, were called out to Plaintiff's residence for a domestic dispute.

42.  Upon arrival the officers observed Plaintiff standing outside the residence in the front yard then placed him into the court pursuant the arrest warrant issued by Defendant Bray.

43.  On June 24, 2018, at approximately 1:23 pm, Detective Lucas Bray read Defendant his Miranda Rights, after which Defendant waived his right to Fifth Amendment right to counsel and Sixth Amendment right to have an attorney present during questioning, then submitted to a ninety minute custodial interrogation conducted by Detective Bray.

*Evidence Presented at Trial*

44.   Contrary to the allegation averred by Ms. Jones in her statement, as well as her trial testimony, that Plaintiff broke down and busted her bedroom door then brutally raped her, Plaintiff presented video evidence that in fact Ms. Jones' bedroom door had been damaged weeks prior to the June 21, 2017 incident.

45.   Contrary to Ms. Jones' claim in her statement and at trial that during the alleged sexual assault, Plaintiff held a gun to her head and threatened her, no firearm appeared in the videotape of the sexual encounter/alleged rape which was shown to the jury.

-9-

46. During the videotape of the alleged incident, which was shown to the jury, Erika Jones never told Plaintiff to stop during the video, contrary to several audio recordings depicting sex between Plaintiff and Ms. Jones wherein Plaintiff withdrew upon being told to stop by his wife.

47. The aforementioned audio recordings depicting consensual sex between Plaintiff and Erika Jones were recovered by Defendant, Detective Mark Webb, as the result of a forensic analysis of Plaintiff's cell phone.

48. The audio recordings of consensual sex were not provided in the original discovery provided to Plaintiff by the Commonwealth, and were only recovered by Plaintiff as the result of a separate forensic investigation by a private investigator, hired by Plaintiff.

49. At the conclusion of the videotaped sexual encounter between Plaintiff and Ms. Jones, the couple kissed and engaged in lighthearted banter.

50. The alleged firearm reported by Ms. Jones was a BB gun.

51.   Plaintiff contacted Children and Youth Services to report that Ms. Jones refused to enroll their seven year old daughter, Brianna, in school and that Ms. Jones regularly smoked marijuana in the home, which he felt was detrimental to Brianna.

52. When the CYS investigation was concluded as unfounded, Ms. Jones stopped pursuing prosecution of the case and moved with her daughter to New York City.

53. Ms. Jones only appeared in Court after Mount Pocono Police found her whereabouts and transported her to court for Plaintiff's trial.

54.    There was clearly no legal cause to justify the prosecution of Plaintiff for Rape by Forcible Compulsion, Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Aggravated Indecent Assault without Consent, Simple Assault, Terroristic Threats with Intent to Terrorize Another, and False Imprisonment.

55.    To the extent that there was legal cause to support the stop, detention and/or arrest of Plaintiff, the Defendant, Detective Bray, failed to take reasonable steps to investigate and pursue information that would have indisputably negated any such legal cause.

56.  Detective Bray and Detective Webb deliberately and intentionally concealed the exculpatory audio recordings from discovery, with explicit purpose of denying Plaintiff of a fair trial.

57.    At all times relevant to this Complaint, the conduct of Defendants Bray and Webb was in willful, reckless and callous disregard of Plaintiff's rights under federal and state law.

58.  The deliberate indifference displayed by Defendant Bray in violating Plaintiff's constitutional right to not be arrested without probable cause, stemmed from the failure of Defendant, Mount Pocono Regional Police Chief of Police Chris Wagner as the principle policymaker and implementer of practices, procedures and customs used by Mount Pocono Regional Police, to provide adequate training of Mount Pocono Police Officers.

59.    As a direct and proximate result of the conduct of all defendants, Plaintiff suffered substantial damages, including physical and psychological harm, some or all of which may be permanent.

## CAUSES OF ACTION

### Count I

**(Civil Rights Action [42 U.S.C. Section 1983]) Malicious Prosecution against**

**Defendants Detective Lucas Bray and Detective Mark Webb**

60.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-59.

61.  42 U.S.C. Section 1983 provides that:

> Every person, who under color of any statute, ordinance,
> regulation, custom or usage of any state of territory or the District
> of Columbia subjects or causes to be subjected any citizen of the
> United States or other person within the jurisdiction thereof to
> the deprivation of any other person within the jurisdiction thereof
> to the deprivation of any rights, privileges or immunities secured
> by the constitution and law shall be liable to the party injured in
> an action at law, suit in equity, or other appropriate proceeding
> for redress . . .

62.    Plaintiff in this action is a citizen of the United States and all of the

individual police officer Defendants to this claim are persons for purposes of 42

U.S.C. Section 1983,

63.  Defendants Bray and Webb at all times relevant hereto, were acting under

the color of state law in their capacity as Detectives with the Mount Pocono

Regional Police Department, on behalf of Tobyhanna, Pennsylvania, and their acts

or omissions were conducted within the scope of their official duties or

employment.

64.  At the time of the complained events, Plaintiff had the clearly established

constitutional right to be free from malicious prosecution without probable cause

under the Fourth Amendment and in violation of due process under the

Fourteenth Amendment.

65.  Any reasonable police detective knew or should have known of these rights at the time of the complained of conduct as they were clearly established at the time.

66.  Defendants Bray and Webb violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process, when they secured false charges against Plaintiff, in large measure through concealing exculpatory evidence which would have established beyond a reasonable doubt and did establish beyond a reasonable doubt that the sexual encounter which Defendants alleged was a forcible rape, was actually a consensual sexual encounter, ignoring the victim's motivation to lie and frame Plaintiff because he contacted Monroe County Children and Youth Services about the victim's dereliction as a parent, and disregarding videotape evidence which indicated that alleged victim did lie where the videotape depicting the incident wherein the victim's bedroom door had been busted did not involve Plaintiff entering the victim's bedroom and raping her at gunpoint, but showed Plaintiff apologizing and promising to repair the damage, and finally by ignoring that contrary to the allegations of the alleged victim, Plaintiff did not have firearm, but had ordered a toy gun for his son in New York.

67.  Defendants Bray and Webb intentionally and maliciously instituted a criminal proceeding for Rape, Involuntary Deviate Sexual Intercourse and lesser included felonious sex crimes against Plaintiff without probable cause.

68.  Defendants Bray and Webb engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's protected constitutional rights.

69.  The procurement of prosecution against Plaintiff for the false allegation that Plaintiff brutally raped his wife, Erika Jones, was malicious, shocking, and objectively unreasonable in the light of the circumstances.

70.  A jury fully acquitted Plaintiff of Rape and all lesser included sexual assault offenses.

71.  The acts or omissions of Defendants Bray and Webb were the moving force behind Plaintiff's injuries.

72.  The acts or omissions of Defendants Bray and Webb described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

73.  Defendants Bray and Webb are not entitled to qualified immunity for the complained of conduct.

74.  Plaintiff was subject to humiliation, fear, and pain and suffering by the illegal acts of Defendants Bray and Webb, suffered injuries as a result of their actions.

75.  Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. Section 1988, and all applicable law, and such additional relief as the Court deems just.

## COUNT II

**(Civil Rights Action (42 U.S.C. Section 1983) Racial Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S,C. Section 1981 against Defendants Detective Lucas Bray and Detective Mark Bray**

76. Plaintiff re-alleges and incorporates by reference allegations contained in paragraphs 1-75.

77. **42 U.S.C. Section 1983** provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . . . .

78. Plaintiff in this action is a citizen of the United States and all of the individual police detective defendants to this case are persons for purposes of 42 U.S.C. Section 1983.

79. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Mount Pocono Regional Police Detectives respectively, and their acts or omissions were conducted within the scope of their official duties or employment.

80. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

81.    Title 42 U.S.C. Section 1981 ("Section 1981") provides in pertinent part:

(a)    All persons within the jurisdiction of the United States shall have
the same right in every State and Territory to make and enforce
contracts, to sue, be parties, give evidence, and to the full and equal
benefit of all laws, and proceedings for the security of persons and
property as is enjoyed by white citizens, and shall be subject to like
punishment, pains, penalties, taxes, and licenses, and exactions of every
kind, and to no other.

82.    Plaintff, as an African-American is a member of a protected class, and thus
also had the clearly established statutory right under this provision of 42 U.S.C.
Section 1981 to not be free from racially motivated arrests, searches and filing of
false charges.

83.    Any reasonable officer should have known of these rights at the time of
the complained of conduct as they were clearly established at that time.

84.    Plaintiff's race was a motivating factor in the decision of Defendants to
arrest Plaintiff for Rape and lesser included sexual assault offenses without probable
cause and maliciously prosecute him with false charges, where Defendants
concealed exculpatory evidence and disregarded the inconsistencies and outright
lies of the alleged victim, who Defendants knew had a motive to lie, by virtue of
Plaintiff contacting Monroe County Children and Youth Services to report the alleged
victim's neglect of their eight year old daughter Brianna Romero.

85.    Defendants' conduct was undertaken with the purpose of depriving
Plaintiff of the equal protection and benefits of the law, equal priviliges and
immunities under the law, and due process in violation of the Fourteenth
Amendment to the United States Constitution and 42 U.S.C. Section 1981.

86. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected rights.

87. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

88. These individual Defendant acted in concert and joint action with each other.

89. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

90. Defendants are not entitled to qualified immunity for the complained of conduct.

91. The Defendants to this claim at all times relevant hereto and acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

92. As a proximate result of Defendants' unlawful conduct Plaintiff has suffered emotional injuries and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

93. On information and belief, Plaintiff may suffer lost future earnings as a result of the public stigma flowing from such a high profile publicized case.   Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, pre-judgment interest and costs as allowable by federal law.

94.  In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. Section 1983, in that the actions of each of Detective Lucas Bray and Detective Mark Bray have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## COUNT III

**(Civil Rights Action (42 U.S.C. Section 1983) - Deliberately Indifferent Policies, Practices, Customs, Training and Supervision in violation of the Fourth and Fourteenth Amendments and in violation of 42 U.S.C. Section 1981 against Defendants Mount Pocono Regional Chief of Police Chris Wagner and Tobyhanna Township, Pennsylvania**

95.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-94.

96.  42 U.S.C. Section 1983 provides that:

> Every person, who under color of any statute ordinance, regulation, custom usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in action at law, suit in equity, or other appropriate proceeding for redress . . . .

97.  Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. Section 1983.

98.     Defendants to this claim at all times were acting under the color of state law.

99.     Plaintiff had the following clearly established rights at the time of the complained of conduct.

> A.    The right to be free from malicious prosecution under the Fourth Amendment and Fourteenth Amendments to the United States Constitution.
>
> B.    The right to be free from discrimination by police under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. Section 1981.

100.    Defendant Mount Pocono Regional Police Chief, Chris Wagner, and Tobyhanna Township, Pennsylvania knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

101.    The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

102.    Defendants are not entitled to qualified immunity for the complained of conduct.

103.    Defendant Chief Wagner was at all times the policymaker for Tobyhanna Township, Pennsylvania and Mount Pocono Regional Police Department, and in that capacity established policies, procedures, customs, and or practices for the same.

104.    Defendant Wagner developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

105.    Defendants Wagner and Tobyhanna Township have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

106.    In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized

training and supervision is deliberately indifferent to those rights.

107.    The deliberately indifferent training and supervision provided by Defendants Chief Wagner and Tobyhanna Township, Pennsylvania resulted a conscious or deliberate choice to follow a course of action from among various alternatives available to the aforementioned Defendants and were the moving forces in the constitutional and federal violations and injuries complained of by Plaintiff.

108.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered emotional injury and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

109.    On information and belief, Plaintiff may suffer lost future earnings and impaired earning capacities from the public stigma accruing from such a high profile publicized case, in amounts to be ascertained at trial.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, pre-judgment interest and costs as allowable by federal law.

110.    Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. Section 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practice, habits, customs, usages, training and supervision with respect to the rights described herein, which Defendants have no intention for voluntarily correcting despite obvious need and requests for such correction.

## COUNT IV

**Publicity Placing Plaintiff in False Light against Defendants, Detective Lucas Bray and Detective Mark Webb**

111.  Plaintiff re-alleges and incorporates by reference allegations contained paragraphs 1-110.

112.  By prosecuting Plaintiff for sex crimes, without probable cause, which were widely depicted in the Pocono Record newspaper and other local media, Defendants Bray and Webb engaged in conduct which had the effect of placing Plaintiff in a false light before the public.

113.  As a result of Defendants' conduct Plaintiff suffered, and continues to suffer, substantial damages and irreparable harm as a result of being placed in a false light before the public which would be highly offensive to a reasonable person.

114.  Defendants' reckless and malicious conduct in casting Plaintiff in a false light entitles him to compensatory damages, punitive damages, and such other relief as the Court may deem just and proper.

## COUNT V

**Intentional Infliction of Emotional Distress against Defendants Detective Lucas Bray and Detective Mark Webb**

115.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-114.

116.  By engaging in the acts herein alleged, Defendants Bray and Webb engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiff to suffer emotional distress.

117.    As a direct, proximate and foreseeable result, Plaintiff suffered severe

emotional distress and the outrageous conduct was the cause of the emotional

trauma suffered by Plaintiff.

118.    The conduct of Defendants also amounts to oppression, fraud or malice

and punitive damages should be assessed against Defendants for the purpose of

punishment and for the sake of example.

### COUNT IV

**Common Law Malicious Prosecution Committed by Defendant's
Detective Lucas Bray and Detective Mark Webb**

119.    Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1 though 118.

120.    A person wrongly accused may recover for malicious prosecution by proving

three basic elements: 1) that the underlying proceedings terminated favorably for

the accused; 2) that the defendant caused those proceedings to be instituted

without probable cause and 3) malice.    Restatement (Second) of Torts Section

653.[2]

121.    Clearly where Plaintiff was acquitted of Rape and all lesser included offenses,

the prosecution against Plaintiff was commenced without a scintilla of probable

cause and Defendants Bray and Webb demonstrated malice by concealing

exculpatory evidence, Defendants Bray and Webb engaged in malicious prosecution.

122.  As a result of Defendants' commission of malicious prosecution against Plaintiff,

Plaintiff has suffered, and continues to suffer, substantial damages and irreparable

harm as a result which would be highly offensive to a reasonable person.

-23-

123.  Defendants' commission of malicious prosecution entitles Plaintiff to compensatory damages, punitive damages, and such other relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff respectfully requests

A.    Compensatory damages as to all defendants;

B.    Punitive Damages as to Defendants Bray and Webb

C.    Reasonable attorney's fees and costs as to all Defendants;

D.    Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

Respectfully submitted:

*Emilio Romero*

Emilio Romero
Monroe County Prison
4250 Manor Drive
Stroudsburg, PA 18360

-24-