**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT COURT OF PENNSYLVANIA**

| | |
|---|---|
| **EMILIO ROMERO,** | : |
| **Plaintiff** | : |
| | :   **CIVIL ACTION** |
| **v.** | : |
| | :   **3:19-cv-01038-JFS** |
| **TOBYHANNA TOWNSHP, PA,** | : |
| **&** | : |
| **MOUNT POCONO BOROUGH, PA** | : |
| **&** | : |
| **COOLBAUGH TOWNSHIP, PA** | : |
| **&** | : |
| **BARRETT TOWNSHP, PA** | : |
| **&** | : |
| **CHIEF OF POLICE CHRIS WAGNER,** | : |
| **&** | : |
| **DETECTIVE LUCAS BRAY** | : |
| **&** | : |
| **DETECTIVE MARK WEBBE** | : |
| **&** | : |
| **ASSISTANT DISTRICT ATTORNEY MICHAEL RACKACZEWSKI,** | : |
| **Defendants,** | : |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF**
**CIVIL PROCEDURE56 AND LOCAL RULE 56.1**

**The within Memorandum of Law in support of Plaintiff's Response in Opposition to**

**Defendant's Motion for Summary    Pursuant to Federal Rule of Civil Procedure**

**12(b)(6), on behalf of the Plaintiff, Emilio Romero, by and through his attorney,**

**Earl Raynor, Esquire, hereby represents the following:**

**I.   STATEMENT OF THE CASE**

This is a civil rights complaint brought under 42 U.S.C. Section 1983 and raising

supplemental state-law claims concerning the actions of the Defendants, Detective

Lucas Bray and Detective Brian Webbe in arresting and charging Plaintiff with a crime

without any legal or factual basis.    The actions and conduct of Defendants, Bray and Webbe, are the result of a policy, practice, custom and deliberate indifference on the part of the Defendants Tobyhanna Township, Pennsylvania, Mount Pocono Borough, Pennsylvania, Coolbaugh Township, Pennsylvania, Tunkhannock Townshp, Pennsylvania, Barret Township, Pennsylvania, Paradise Township, Pennsylvania, and Pocono Mountain Regional Police Chief of Police, Chris Wagner.

On June 24, 2017, the Plaintiff, Emilio Romero, was arrested and charged with Rape by Forcible Compulsion, 18 Pa.C.S.A. Section 3121(a)(1), Involuntary Deviate Sexual Intercourse by Forcible Compulsion, 18 Pa.C.S.A. Section 3123(a)(1), Aggravated Indecent Assault without Consent, 18 Pa.C.S.A. Section 3125(a)(1), Possession of Device for Intercept Communications, 18 Pa.C.S.A. Section 5705, Intercept Communications, 18 Pa.C.S.A. Section 5703, Invasion of Privacy, 18 Pa.C.S.A. Section 7507, Simple Assault, 18 Pa.C.S.A. Section 2701(a)(3), Terroristic Threats with Intent to Terrorize Another, 18 Pa.C.S.A. Section 2706(a)(1), Possession of an Instrument of Crime, 18 Pa.C.S.A. Section 907 and lesser included offenses, for allegedly stalking and ultimately raping his wife, Erika Jones.

Following a jury trial, on December 14, 2018, Plaintiff was found not guilty of Rape Forcible Compulsion, (F1), IDSI Forcible Compulsion, (F1), Sexual Assault, (F2), Terroristic Threats with intent to Terrorize Another, (M1), Simple Assault, (M2), and False Imprisonment, (M2), but found guilty of Criminal Use of a Communications Facility, (F3), Intercept Communications, (F3), Possession of Device for Intercept Communication, (F3), Possession Instrument of Crime, (M1), Intentional Possession of a Controlled Substance, (M), Invasion of Privacy, (M2), and Tamper with Fabricate

Evidence (M2).

Following a sentencing hearing on May 3, 2019, Plaintiff was sentenced to an aggregate cumulative sentence of five (5) to twelve (12) years incarceration, followed by a consecutive term of three years probation. Plaintiff's sentence consisted of eighteen (18) to forty-eight (48) months for Criminal Use of a Communication Facility, followed by three years reporting probation, followed by a consecutive sentence of eighteen (18) to forty-eight (48) months for Interception of Communications, followed by a consecutive term of twelve (12) to twenty-four (24) months for Possession of a Device for Intercepting Communications, followed by a consecutive sentence of twelve (12) to twenty-four (24) months for invasion of Privacy, which yielded an aggregate cumulative sentence of five (5) to twelve (12) years, followed by three (3) years reporting probation.

Plaintiff was also classified as a Tier 1 offender under the Sexual Offender Registration and Notification Act (SORNA).

Plaintiff timely filed his complaint, pro se,   on June 19, 2019.   (Doc. 1).

Defendant Brian Webbe filed an Answer to the Complaint on November 13, 2019.   (Doc. 28).

On December 9, 2019, Plaintiff filed an Amended Complaint. (Doc. 40). Defendants Rackaczewski and Webbe, filed an Answer to Plaintiff's Amended Complaint on December 16, 2019, and the remaining Defendants filed an Answer on January 16, 2020.   (Doc. 46) and (Doc. 49).

Pursuant to the Court's scheduling order, all Defendants filed Motions for Summary Judgment on or before October 30, 2020.   (Doc. 64) & (Doc. 66)

Defendants' Motion for Summary Judgment raise the following grounds for dismissal:

(1)  Plaintiff has failed to state claims or set forth a cause of action for malicious prosecution under the Fourth Amendment in Counts II, III and IV respectively of his Complaint because Defendant Bray's actions were supported by probable cause;

(2)   Plaintiff has failed to state a claim or set forth a cause of action for Equal Protection under the Fourteenth Amendment and 42 U.S.C. Section 1981 at Count V of his Complaint.

(3)  Plaintiff has failed to state a Monell claim against the Township Defendants and/or Police Chief Chris Wagner because he has failed to identify any policy, practice, custom, or lack thereof, that violated his constitutional rights;

(4)  *The Complaint fails to State a Claim for false light against Defendant Bray.*

(5)  *The Complaint fails to State a Claim for Intentional Infliction of Emotional Distress Against Detective Bray.*

(6)  Defendants Bray, Rackaczewski and Weber are entitled to Qualified Immunity;

(7)  *Plaintiff is not entitled to punitive damages;*

(8)  *Defendant ADA Rackaczewski has absolute immunity from prosecution by virtue of the fact he is a prosecutor;*

(9)  *Defendant Webbe has absolute testimonial immunity;*

-4-

(10)  *Plaintiff can't raise a __Brady__ claim since all evidence was presented before trial;*

(11)  *Defendant Webbe can't be liable under __Brady__ as an expert witness;*

(12)  *Defendant ADA Rackaczewski has absolute immunity for __Brady__ violations by virtue of his role as a prosecutor;*

(13)  *Defendant Rackaczewski can not be liable for a false light claim where his statements to the press were truthful and he enjoys immunity by virtue of his role as a prosecutor.*

## II.   FACTUAL ALLEGATIONS

Plaintiff's Brief hereby incorporates his Statement of Facts, which is filed concurrently, consistent with Local Rule 56.1 and Compilation of Evidence by reference as though set forth fully at length.    (Doc. 76) & (Doc. 77).

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs the grant of summary judgment. Parties may move for summary judgment on particular claims or defenses, or on a part of each claim or defense.   __See Fed.R.Civ.P. 56(a)__.   "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   __Id.__ "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party."   __Pearson v. Prison Health Serv.,__ __850 F.3d 526, 534 (3df Cir. 2017) (citation omitted)__.

In pertinent part, parties moving for, or opposing, summary judgment must

support their position by "citing to particular parts of materials in the record,

including depositions, affidavits or declarations, stipulations (including those made

for the purposes of the motion only), admissions, interrogatory answers, or other

materials."   **See Fed.R.Civ.P. 56(c)(1)(A)**.   "The nonmoving party cannot rest on

mere pleadings or allegations," **El v. Se.Pa.Tranportation Authority, 479 F.3d 232,**

**238 (3d Cir. 200**1).   The Court "must view all evidence and draw all inferences in

the light most favorable to the non-moving party" and will grant the motion only "if

on reasonable juror could find for the non-movant."   **Lawrence v. CIty of**

**Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)**.

## IV.  ARGUMENT

**Applicable Legal Standards**

**1.   Claim Asserted Pursuant to 42 U.S.C. Section 1983**

Plaintiff's constitutional claims are actionable against Defendants Detective

Lucas Bray, Detective Brian Webbe, Police Chief Chris Wagner, and Assistant District

Attorney Michael Rackaczewski, through **42 U.S.C. Section 1983.   Section 1983** is

an enabling statute that does not create any substantive rights, but provides a

remedy for the violation of federal constitutionalor statutory rights.   **Gruenke v.**

**Seip,** **225 F.3d 290, 298 (3d Cir. 2000)**.   Section 1983 states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person wihtin the
> jurisdiction thereof to the deprivation of any rights,
> privileges or immunities secured by the Constitution and
> laws,shall be liable to the party injured in an action at law,
> suit in equity, or other proceeding for redress.

-6-

**42 U.S.C. Section 1983**.

Thus to state a claim under Section 1983, a plaintiff must demonstrate that

defendant, acting under color of state law, deprived plaintiff of a federal

constitutional or statutory right.   **Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct.**

**1908, 1913, 68 L.Ed.2d 420, 428 (1986);Chainey v. Street, 523 F.3d 200, 219 (3d Cir.**

**2008) (quoting Kaucher v. County of Bucks, 45 F.3d 418, 423 (3d Cir. 2006))**.

A defendant acts under color of state law when he exercises power "possessed

by virtue of state law and made possible only because the wrongdoer is clothed with

the authority of state law."   **West v. Adkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255,**

**101 L.Ed.2d 40, 49 (1988);Boneburger v. Plymouth Township, 132 F.3d 20, 23 (3d**

**Cir. 1997)**.

**2.   Malicious Prosecution**

The United States Court of Appeals for the Third Circuit has stated that in

order to succeed on a Fourth Amendment malicious prosecution claim pursuant to

Section 1983, a plaintiff must satisfy the following elements:

> (1)  the defendant initiated a criminal proceeding;
>
> (2)   the criminal proceeding in [the plaintiff's] favor;
>
> (3)   the defendant initiated the proceeding without probable cause;
>
> (4)  the defendant acted maliciously or for a purpose other that bring the defendant to justice; and
>
> (5)  The plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

**Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014) (alteration in original)**

**(quoting JOhnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)**.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." **Merkle v. Upper Dublin School District, 211 F.3d 782, 788 (3d Cir. 2000) (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995))**. "Generally, 'the question of probable cause in a [S]ection 1983 damage suit is one for the jury.'" **Id. (quoting Montgomery v. De Simone, 150 F.3d 120, 124 (3d Cir. 1998))**. "This is particularly true where the probable cause determination rests on credibility conflicts." **Id. (citing Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997); Dreary v. Three Un-Nmed Police Officers,746 F.2d 185, 192 (3d CIr. 1984))**. "Howver, a district court my conclude 'that probable cause exists as a matter of law if evidence, viewed most favorably to the plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." **Id. At 788-789 (quoting Sherwood v. Mulvihill,, 113 F.3d 396, 401 (3d Cir. 1997))**. As long as the officer [] had some reasonable basis to believe [the plaintiff] had committed a crime, the arrest is justified as being based on probable cause[,]" and "[p]robable cause need only exist as to any offense that could be charged under the circumstances." **Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (citing Edwards v. City of Philadelphia, 860 F.2d 568, 575-76 (3d Cir. 1994)**.

Because the cause of action for malicious prosecution "hinge[s] on probable cause, the constitutional voltion question. . . . turns on whether 'a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time." **See Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (internal quotation marks**

omitted) (quoting <u>Blaylock v. City of Philadelpha,</u> 504 F.3d 405, 411 (3d cir. 2007)). When the plaintiff was arrested pursuant to a warrant, it is proper for the Court to 'focus[] its probable cause analysis on whether [the defendant] 'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that creawte[d] a falsehood in applying for the warrant.'" **See Id.**   (third alteration in original) (internal quotation marks omitted) **(quoting <u>Sherwood,</u> 113 F.3d at 399).**   accordingly, the Court is concerned with "two elements: first, whethe the the the officer, with t least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second whether those assertions or omissions were material, or necessary, to the finding of probable cause." **See Id.**   **(alteration in original) (internal quotation marks omitted) (quoting <u>Dempsey v. Bucknell University,</u> 834 F.3d 457, 468-69 (3d Cir. 2016)).**

The United States Court of Appeals for the Third Circuit has held that "omissions are made with reckless disregard if an officer withhold a fact in his ken" such that "[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know." **See <u>Wilson v. Russo,</u> 212 F.3d 781, 788 (3d Cir. 2000) (quoting <u>United States v. Jacobs,</u> 986 F.2d 1231, 1235 (8th Cir. 1993)).**   An assertion though, "is made with reckless disregrd when 'viewing all the evidence, the affiant must have entertained serious doubts about the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" **See Id. (quoting <u>United Sttes v. Clapp,</u> 46 F.3d 795, 801 n.6 (8th Cir. 1995)).**   Once [the Court] determines whether an omission or assertion was made with reckless disregard for the truth, the plaintiff must proceed to the second prong of this

two-step paradigm, which tasks him to prove that inclusion or exclusion, respectively, of the information recklessly disregarded would have negated a finding of probable cause." **Mcketa v. Kamoie, 955 F.Supp.2d 345, 356 (M.D. P. 20130 (citing Wilson, 212 F.3d at 786-87)**.

A viable malicious prosecution claim also requires that the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice.    "Malice has been stated to include ill will in the sense of spite, the use of a prosecution for an extraneous improper purpose, or the reckless and oppressive disregard of the plaintiff's rights."  **Bristow v. Cleavenger, 80 F.Supp.2d 421, 435 (M.D. Pa. 2000) (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1998); Hugee v. Pa.R.Co., 101 A.2d 740, 743 (Pa. 1954))**.   "Additionally, malice may be inferred from the absence of probable cause."  **Id. (citing Kelley v Gen. Teamsters, Chauffeurs, and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988); Hugee, 101 A.2d at 743); see also Lippay v. Christos, 996 F.2d 1490, 503 (3d Cir. 1993)** (recognizing that a factfinder may "infer malice fro the absence of probable cause").

### 3.    Qualified Immunity

"Police Officers, embodying the authority of the state, are liable under Section 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity."  **Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007)**.   "Qualified immunity 'gives ample room for mistaken judgments' by shielding' all but the plainly incompetent or those knowingly violate the law."  **Olson v. Ako, 724 F.App'x 160, 164 (3d Cir. 2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))**.   "This accommodation recognizes [the] societal interest in law enforcement's pursuit of

investigations unconstrained by the constant fear of being sued." **Id. (citing Hunter v. Bryant, 502 U.S. 224 (1991))**.    Consequently, an official is qualifiedly immune unless "the official violated a statutory or constitutional right," and "the right was clearly established at the time of the challenged conduct." **See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Hartow v. Fitzxgerald, 457 U.S. 800, 818 (1982).** "Courts may begin their consideration with either prong." **Spady v. Bethlehem Area School District, 800 F.3d 633, 657 (3d Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 236 (3d Cir. 2015))**.

"A right is 'clearly established for these purposes when its 'contours… [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. " **Barna v. Board of School Directors of Panther Valley School DIstrict, 877 F.3d 136, 142 (3d CIr. 2017) (alteration in original) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999))**.    "It is not enough that the right is defined at a high level of generality; rather, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." **Id. (alteration in original) (internal quotation marks omitted) (quoting Mullenix v. Luna, _____ U.S. _____ at _____ (2015)**.    As instructed by the United States Court of Appeals for the Third Circuit, when examining whether a constitutional right is clearly established, the Court consider[s] whether a constitutional right is clearly established, the Court must "look first for 'applicable Supreme Court precedent[]'" and, if there is none, the Court "consider[s] whether there is a case of persuasive authority' in the Court of Appeals [that] could clearly establish a right for the purposes of qualified." **See Id.** (fourth alteration in original) **(quoting Mammaro v. New Jersey Division of Child**

**Protection and Permanency,** 814 F.3d 164, 169 Z(3d CIr. 2016), **as amended (March 21, 2016))**.   "The authority need not be 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."   **Id. (quoting al-KIdd,** 563 U.S. at 741).

### A.  PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION SHOULD NOT BE DISMISSED, WHERE PATROLMAN FRUM INITIATED THE PROSECUTION OF PLAINTIFF WITHOUT PROBABLE CAUSE.

In order to prevail on a Section 1983 malicious prosecution claim, a plaintiff must show the following:

> (1)   the defendant initiated a criminal proceeding; (2) the criminal proceeding in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

**Dibella v. Borough of Beachwood,** 407 F.3d 599, 601 (3d Cir. 2005) **(quoting Estate of Smith v. Marasco,** 318 F.3d 497, 521 (3d Cir. 2003).see also Kossler v. Crisanti, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (en banc).

Working backwards, clearly the fifth element, deprivation of liberty has been satisfied, where Plaintiff is beginning the third year of the five (5) to twelve (12) year cumulative aggregate sentence imposed by the Monroe County Court of Common

Pleas.

With respect to the first prong, Defendant, Detective Lucas Bray initiated the prosecution against Plaintiff where he authored the criminal complaint and affidavit of probable cause for Plaintiff's arrest and the search of his home.

The second prong is also satisfied, where although Plaintiff was convicted of offenses not connected to the alleged sexual assault of his wife, he was acquitted of all offenses related to the alleged sexual assault, including Forcible Rape, Aggravated Indecent Assault, and Involuntary Deviate Sexual Intercourse, which was the focus of the criminal prosecution and local media attention.

The third prong, considers whether Plaintiff was arrested without probable cause, essentially a false arrest.   An arrest warrant "does not, in itself, shelter an officer from liability for false arrest."   **Wilson, 212 F.3d at 786**.   To the contrary, a Plaintiff may succeed in a Section 1983 action for false arrest made pursuant to a warrant if the plaintiff shows by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.   **Id. At 786-87 (internal quotations omitted)**.   Thus, we apply a two part test when a party claims that an arrest pursuant to a warrant lacked probable cause.   This test helps ensure that a police officer does not "make unilateral decisions about the materiality of information, or, after sastisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence."   **Id.**   The effort **to** determine whether "an affidavit is false

or misleading must be undertaken with scrupulous neutrality." **Reedy v. Evanson, 615 F.3d 197, 214 n. 24 (3d Cir. 2010)**.   As such, the plaintiffs must prove, by a preponderance of the evidence, that the individual defendants:(1) made assertions or omissions with a reckless disregard for the truth and (2) the statements or omissions are material, or necessary, to the finding of probable cause.

Plaintiffs must first establish the individual defendants made false assertions or omissions either deliberately or with a reckless disregard for the truth.   Assertions are made with reckless disregard for the truth when, "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." **Reedy, 615 F.3d at 213 (citations omitted)**.   Assertions can be made with reckless disregard for the truth "even if they involve minor details - recklessness is measured not by the relevance of the information, but the demonstration of unwillingness to affirmatively distory truth." **Id.**   Omissions are made with reckless disregard for the truth when "an officer recklessly omits facts that any reasonable person would know that a Judge would want to know" in making   probable cause determination.

***In the case sub judice***, Defendant Bray demonstrated to distort the truth by not disclosing that the alleged firearm which Plaintiff allegedly held to Plaintiff' head during the alleged sexual assault was a toy gun, which Plaintiff purchase for his son, who resides in the Bronx New York.   Defendant Bray also failed to disclose that there were text messages from Jones to Plaintiff, discussing spousal rape and how she could use such allegations to remove him from the home.   Detective Bray omitted any mention of the CYS investigation against Ms. Jones which was initiated

-14-

by a report from Plaintiff, which resulted in a scheduled home visit the same day that

Jones accused Plaintiff of Rape.    Finally the Rape kit preformed on Ms. Jones

following the incident, yielded no physical evidence of trauma supporting sexual

assault.

Clearly, each of the aforementioned omissions raise a genuine issue of

material fact with regard to whether Defendant Bray acted with a reckless disregard

for the truth.    After such omissions made with a reckless disregard for the truth

have been established a court assesses whether the omissions are material, or

necessary to the finding of probable cause.    **Reedy, 615 F.3d at 213 (citations**

**omitted)**.    "to determine the materiality of the omissions," a court must "excise the

offending inaccuracies and insert the facts recklesslyomitted, and then determine

whether the corrected affidavit would establish probable cause."    **Id.**    The

corrected affidavit "simply becomes one more set of factual assertions that must be

viewed in the light most favorable to the non-movant."    **Id. At 214 n.24.**

Performing such editing of the affidavit of probable cause would produce an

affidavit that reads:    *(Note Inserted Omitted Paragraphs are designated by Stars*

*and parenthesis).*

On June 22, 2019, Erika Jones, made a 9-1-1 call to the Mount Pocono Regional

Police Department, to report that she had been raped by her husband the Plaintiff,

Emilio Romero.

Shortly, thereafter, Ms. Jones was interviewed in her home, by Detective Scott

Dunlap and Corporal Mertz of the Mount Pocono Police Department.

Ms. Jones relayed the following account.

During the early evening of June 21, 2017, at approximately, 8:30 pm, the Complainant, Erika Jones, was home with the Defendant and their seven year old daughter Brianna Romero, when she discovered a camera pen in her bedroom.

The Complainant began arguing with the Defendant, who was standing in the hallway just outside of her bedroom.    Eventually the Complainant stepped out of her bedroom to walk to the bathroom, when she was immediately accosted at gunpoint by the Defendant.The Defendant put the firearm, which was big and black, to the Complainant's head and forced her back into the bedroom, as he threatened to kill her.    After making repeated threats to kill the Complainant, Defendant put the gun to the back of Complainant's head, which was separated from the gun by a pillow and pulled the trigger. The gun didn't fire, at which time Defendant told the Complainant that she "was lucky that time."    *** (The firearm allegedly employed by Plaintiff was a toy gun).

Defendant then ordered the Complainant to disrobe, while pointing the gun at her, as Complainant begged him to stop.

At some point, Defendant went to go check on their daughter, Brianna, who was texting the Complainant as the ordeal unraveled.    When Defendant left her bedroom, the Complainant locked the door and pretended to call the police. Moments later, Defendant busted the Complainant's door down, re-entered the bedroom where he threatened to hit Complaint with his gun, then took her clothes off and began raping her, as the Complainant cried.

At some point Defendant began recording the rape on his phone, then turned her around and raped her from behind, while threatening to penetrate

her anus.    Eventually, Defendant ejaculated inside the Complainant's vagina and let her go.

Detective Dunlap and Corporal Mertz also interviewed the Plaintiff's seven year old daughter Brianna Romero, who corroborated her mother's account of the incident, including Defendant's possession of a big black handgun.

The Defendant, Detective Lucas Bray, obtained and executed a search warrant for the home, which resulted in the discovery of a black beretta replica handgun that was locked in a small safe in Plaintiff's bedroom, several pieces of covert recording devices, the camera pen, Erika Jones' panties, and male sexual performance enhancing drugs.

*** (Prior to the incident, Ms. Jones sent Plaintiff threatening text messages suggesting that she would accuse him of Rape to have him removed from the home.)

***(The same morning that Ms. Jones called police to accuse Plaintiff of Rape, she had a scheduled home visit with CYS, which stemmed from a report filed by Plaintiff).

***(A rape kit performed on Ms. Jones showed no bruising, tearing, or any physical evidence supporting a physical assault of any kind.)

***(Defendant Bray actually viewed a videotape of the alleged incident on Plaintiff's cellphone, which did not reveal a firearm, much less a gunpoint assault, and the Plaintiff and Ms. Jones actually kissed each other and said they loved each other following the incident.

Later that day, Defendant Bray issued an arrest warrant for the Plaintiff,

pursuant to the foregoing affidavit of probable cause.

Clearly, a reasonable jury could find by a preponderance of the evidence that the omissions are material to the finding of probable cause. Therefore, by any analysis the reconstructed affidavit when viewed in the light most favorable to Plaintiff, a genuine issueof disputed fact exists as to whetehr there was probable cause at the time of Plaintiff's arrest.

Finally, plaintiff's must prove that Defendant Bray acted maliciously or for a purpose other than bringing the Plaintiff justice. "Malice has been defined as ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." **Lippay v. Christos, 996 F.2d 1490. 1502 (3d CIr. 1993) (emphasis in original)**. The Third Circuit emphasized that "a police officer could have ill-will or spite against someone they never met-I.e., a member of a particularethnic or racial group." **Id.** at 1503. Finally, malice be inferred from the absence of probable cause. **Id.**

In the present case, there is are genuine issues of a material fact as to whether Defendant Bray acted maliciously, where clearly but for the omissions from the affidavit of probable cause there would be no probable cause to support Plaintiff's arrest, and Defendant Bray was clearly motivated by race where Plaintiff was an Hispanic ex-gang member fro the Bronx, New York.

Based on the foregoing analysis Plaintiff has clearly sastisfied the favorable termination and deprivation of liberty and initiation elements, and there iare genuine issues of material fact pertaining to probable cause and malice. Therefore, Defendant Bray's motion for summary judgment on Plaintiff's malicious

prosecution claim should be denied.

### B. DEFENDANTS DETECTIVE BRAY, CHIEF CHRIS WAGNER, AND DETECTIVE BRAN WEBBE, ARE NOT ENTITLED TO QUALIFIED IMMUNITY WHERE THEIR CONDUCT IN DETAINING, ARRESTING AND PROSECUTING PLAINTIFF WITHOUT PROBABLE CAUSE WAS WHOLLY UNREASONABLE.

"The doctrine of qualified immunity protects governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" **Pearson v. Callahan, 555 U.S. 223 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).** Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" **Pearson, at 815 (quoting Mitchell v. Forsythe, 472 U.S. 511, 526 (1985))**. "[The Supreme Court] has repeatedly stressed the importance of resolving immunity questions at the earliest stages in litigation.'" **Scott v. Harris, 550 U.S. 372, 376 n.2 (2007) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).**

The United States Supreme Court has articulated a two-part test to determine whether a state official is entitled to the defense of qualified immunity. In **Saucier v. Katz, 533 U.S. 194 (2001)**, the Supreme Court stated that the initial inquiry is "[t]aken in the light most favorable to the party aserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." **533 U.S. at 201**. If no such right would have been violated, then there is no need for the second step.

If a right were violated, then the next question to ask is whether a reasonable

officer would have known that his or her conduct violated the right.   **Debellis v. Kulp, 166 F.Supp.2d 255, 266 (E.D. Pa. 2001)**.

Because a violation of a constitutional right can be established   by Defendant Bray's unlawful seizure of Plaintiff, it must be determined whether the right was clearly established.

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful I the situation he confronted."   **Reedy, 615 F.3d at 224 (quoting Katz, 533 U.S> at 202)**.   A defendant police officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue . . . ."   **Reedy, 615 F>3d at 224 (quoting Mliey v. Briggs, 475 U.S. 335, 341 (1986)**.   A police officer fails to observe a right that was clearly established by submitting "an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth."   **Lippay, 996 F.2d at 1504.**

The standard for granting or denying a motio for summary judgment does not change in the qualified immunity context."   **Curley v. Klem,** 298 F.3d 271, 282 (3 Cir. 2002).   A court must determine whether the defendant should prevail as a matter of law when viewing the facts in the light most favorable to Plaintiff.   **Id.**

Clearly, Defendant Bray does not enjoy qualified immunity, where there is a genuine issue of material fact as to whether his omissions of facts favorable to Plaintiff from the affidavit of probable cause, underlying Plaintiff's arrest resulted in Plaintiff being subject to arrest without probable cause for Rape and related sexual assault offenses and malicious prosecution.   Such reckless disregard for the truth,

which incliuded actually witnessing the incident for himself on a videotape recovered

from Plaintiff's cellphone which revealed that there was no gunpoint assault but

consensual sex, with Plaintiff and Ms. Jones kissing and confessing their love for each

other, conduct which a criminal jury deemed consensual sex, is patently

unreasonable and Defendant Bray is clearly aware of the wrongfulness of

his conduct.

According to Plaintiff's deposition, when a recess was called immediately

following Detetiive Webbe testifying that he possessed Plaintiff's cellphone when

the fourteen emails of consensual sex between Plaintiff and Erika Jones were texted

to   Defendant Bray's cellphone, both Defendant Bray and Defendant ADA

Rackaczewski were overheard by Plaintiff instructing Detective Webbe to change his

testimony and say that he returned the phone to Defendant Bray day's earlier.

Clearly participating in the concealment of evidence which was at once

exculpatory and relevant for impeachment for purposes, where Erika Jones gave a

statement to police and testified that prior to the alleged sexual assault she had not

been sexually intimate with Plaintiff, amounted to subordination of perjury by

Defendant Rackaczewski and perjury by Defendant Webbe, which was calculated to

deny Plaintiff a fair trial.

Nor does Chief Chris Wagner enjoy qualified immunity, where eight years

earlier during Chief Wagner's tenure, Defendant Bray engaged in similar conduct in

the case of **Spiess v. Pocono Mountain Regional Police Department, USMD,**

**3:10-cv-00287**.   In **Spiess,** the named plaintiff and co-defendants were charged with

forcible rape and lesser included sexual assault offenses.   Consistent with his

conduct in the case at bar, in **Spiess,**    Defendant Bray was privy to exculpatory

evidence which he did not disclose prior to **Speiss'** arrest for Rape and preliminary

hearing, namely that Spiess' accusers had made false claims of sexual abuse years

earlier, and the two putative provided accounts that were inconsistent with each

other.    The case survived summary judgment and was settled out of court, as the

court determined that there was a genuine issue of material fact as to whether

Defendant Bray and other co-defendants, including Defendant ADA Rackaczewski

subjected Speiss and fellow Plaintiffs to false arrest and malicious prosecution.    The

Court also held that Defendant Bray and the other co-defendants, including

Defendant ADA Michael Rackaczewski did not enjoy qualified immunity.

    Clearly, retaining Defendant Bray, despite such malfeasance was deliberate

indifference to Defendant Bray's level of training, which was wholly unreasonable

conduct on part of Defendant Chief Chris Wagner, which he should have been aware

was patently wrongful.

     Accordingly, Defendants Bray, Webbe, Rackaczewski, and Wagner do not

enjoy qualified immunity against liability for violating Plaintiff's civil rights.

### C.  THE MUNICIPAL DEFENDANTS ND AND CHIEF OF POLICE CHRIS WAGNER ARE LIABLE UNDER MONELL, BECAUSE THEY CLEARLY ARE DELIBERATELY INDIFFERENT TO THE CONSTITUTIONAL RIGHTS OF PLAINTIFF, WHERE THEY FAILED TO ADEQUATELY TRAIN DEFENDANT DETECTIVE LUCAS BRAY, WHO CLEARLY SUBJECTED PLAINTIFF TO MALICIOUS PROSECUTION, CONDUCT WHICH DEFENDANT BRAY

**PREVIOUSLY ENGAGED IN, IN THE HIGH PROFILE CASE OF SPEISS V.**

**POCONO MOUNTAIN REGIONAL POLICE**.

A municipality cannot be liable for the actions of their employees under the

theory of respondeat superior, but can be liable for constitutional violations when

they are the result of an official policy, custom or failure to train. **Monell v. New**

**York City Department of Social Services, 436 U.S. 658 (1978).    A policy is a**

"statement, ordinance, regulation, or decision officially adopted and promulgated by

[the governing body's officers." **Id. at 690**.   A custom is an act "that has not been

formally approved by an appropriate decision-maker, but that is so widespread as to

have the force of law." **Natale v. Camden County Correctional Facility, 318 F.3d**

**575, 584 (3d Cir. 2003)**.    A plaintiff must show the policy was the cause of the

constitutional deprivation.   **Board of County Commissioners v. Bryan County**

**Oklahoma v. Brown, 520 U.S. 397, 404 (1977)**.    It is insufficient to show that one

particular officer was unsatisfactorily trained, since "the officer's shortcomings may

have resulted from factors other than a faulty training program." **City of Canton**

**Ohio v. Harris, 489 U.S. 378, 390-91 (1989)**.    It is also insufficient to merely show a

constitutional deprivation "could have been avoided if an officer had better or

more training," or that a program was negligently administered.   **Id. at 391**.

The Supreme Court has held "the inadequacy of police training may serve as

the basis for Section 1983 liability only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the police come into

contact."   **City of Canton, 489 U.S. at 388 (reversing a jury verdict for the plaintiff)**.

A failure constitutes a policy when "the need for more or different training is so

obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need."   **Id.**

   "Under Section 1983 [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondent superior*."   **Peele v. Delaney, No. 12-4877, 2017 WL 4673457, at *3 (E.D. Pa. 3, 2017) (citation and internal quotation omitted)**.   "There are two ways that a supervisor may be held liable under Section 1983 for acts committed by his or her subordinates.   A supervisor may be liable if they act [act] with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] harm.   A supervisor may be liable also if he or she participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced to the subordinate's unconstitutional conduct."   **Id.**

   To establish that supervisors are liable under Section 1983 for deliberate indifference to an unconstitutional policy or practice, [t]he plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this risk existed, (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure.   **Brown v. Muhlenberg Township, 269 F.3d**

**205, 216 (3d Cir. 2001).**    A Plaintiff must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest a relationship between the "identified deficiency' of a policy or custom and the injury suffered. **Id.** **at 233.**

Certainly, where Defendant Detective Lucas Bray arrested Plaintiff, pursuant to an arrest warrant Forcible gunpoint Rape and lesser included sexual assault offenses, which omitted exculpatory evidence that the putative firearm in question was a toy gun, the alleged victim's Rape kit was negative for signs of rape or sexual abuse, ,the alleged victim had previously threatened to accuse Plaintiff of Rape to remove him from the home, and on the same day the victim reported the alleged Rape to police she was scheduled to undergo a home visit from CYS, as the result of a report made by Plaintiff, conduct similar to conduct committed by Defendant Bray many years prior in **Spiess v. Mount Pocono Regional Police,** Detective Bray initiated the arrest and prosecution of Plaintiff without probable cause, and clearly Detective Bray had for years received inadequate training to perform his duties as a police officer, a fact to which the Township Defendants and Defendant Chief Chris Wagner were delibeerately indifferent.

Defendant Bray apparently objects to liability of Defendant Police Chief Michael Tautin, because he was not personally involved in the botched investigation and arrest of Plaintiff.    However, it was clearly established in **Delaney,** that there are two ways that police supervisors may be held liable under **Monell,** actual personal involvement in violating a plaintiff's constitutional rights, or exercising deliberate indifference to persons being falsely arrested and falsely

imprisoned through acquiescence, which was clearly what happened in the ***case sub judice***, where Defendant Wagner, like the Municipal Defendants were clearly aware of Plaintiff's criminal case which was highly publicized by the local media.      For Police Chief Wagner to not intervene and correct the miscarriage of justice perpetrated by Defendant Bray's lawless arrest of Plaintiff clearly evidenced a policy of harassing and persecuting African-American minority males men in Monroe County, Pennsylvania.

Accordingly, for the foregoing reasons, Defendants Municipal Defendants and Chief of Police Chris Wagner are liable under **Monell** for the unconstitutional conduct of Defendant Detective Lucas Bray.

**D.   THE MOTION OF DEFENDANTS DETECTIVE LUCAS BRAY AND DETECTIVE BRIAN WEBBE FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DENIED, WHERE DEFENDANTS' CONDUCT IN SWEARING OUT A FALSE AFFIDAVIT, WHICH OMITTED EXCULPATORY EVIDENCE, AND THEREFORE DID NOT GIVE RISE TO PROBABLE CAUSE WHICH RESULTED IN THE MALICIOUS PROSECUTION OF PLAINTIFF, AS WELL AS CONSPIRING TO CONCEAL EXCULPATORY EVIDENCE WAS EXTREME, OUTRAGEOUS, RECKLESS CONDUCT WHICH AROSE TO THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

To establish a claim under Pennsylvania law for IED, plaintiff must show that a defendant: (1) by extreme and outrageous conduct (2) intentionally or recklessly

caused (3) severe emotional distress.   **Manley v. Fitzgerald**, 997 A.2d 1235, 1241

**(Pa.Commw.Ct. 2010).**   Extreme and outrageous conduct is defined as conduct "so

outrageous in character, and so extreme in degree as to go beyond all possible

bounds of decency and to be regarded as atrocious, and utterly intolerable in a

civilized community."   **Hunger v. GrandCent. Sanitation,** 670 A.2d 173, 182

**(Pa.Super.Ct. 1996) (citing** Restatement (Second) of Torts, **Section 46 cmt. D (1977)**.

"Conduct that Pennsylvania courts have deemed sufficiently outrageous to

constitute IED includes: (1) killing the plaintiff's son with an automobile and then

burying the body, rather than reporting the incident to the police; (2) intentionally

fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly

releasing to the press false medical records diagnosing the plaintiff with a fatal

disease."   **Dull v. West Manchester Township Police Department,** 604 F.Supp.2d

**739, 756 (M.D. Pa, 2009) (citation omitted)**.

　　　The Defendant, Detective Lucas Bray, swore out a false affidavit of probable

cause accusing Plaintiff of a gunpoint assault of his own wife, where the alleged

firearm was actually a toy gun, Defendant's phone depicted the alleged incident

which did not show a gunpoint sexual assault,or even a firearm, but depicted what a

criminal jury construed to be consensual sex, and the affidavit omitted text messages

wherein Plaintiff's wife threatened to remove him from the home by accusing him of

spousal rape as well as the fact that on the day his wife accused him of sexual assault,

she was due for a home visit from a CYS case worker, as the result of a report made

by Plaintiff with social services against her, which alleged among other things that

she smoked marijuana around their daughter and had exotic sexual habits, including

"stripping for Jesus."   The false affidavit of probable cause clearly did not support

probable cause, because Defendant Bray displayed reckless disregard for the truth in

omitting the exculpatory evidence.

Further both Detective Bray and Detective Webbe engaged in outrageous conduct,

where the two men attempted to conceal 14 audiotapes revealing consensual   sex

between Plaintiff and his wife, exculpatory evidence which impeached Ms. Jones'

false claim that prior to the incident she did not have consensual with Plaintiff, which

was recovered by Detective Webbe pursuant to a forensic evaluation.   As part of

their scheme to cover up this misdeed, Detective Webbe lied about when he

returned the cellphone to Plaintiff during his criminal jury trial at the prodding of

both Detective Bray and Defendant ADA Rackaczewski.

Both Detective Bray's and WEbbe's   conduct was   so outrageous in character,

and so extreme in degree that it is utterly intolerable in a civilized society.

Accordingly, for the foregoing reasons, Plaintiff's claim for intentional

infliction of emotional distress against the Defendant Detective Lucas Bray, should

not not be denied pursuant to summary judgment, where Defendant Bray and

Defendant Webbe engaged in atrocious, outrageous misconduct in swearing out a

false affidavit and conspiring to conceal exculpatory evidence which resulted in the

malicious prosecution of Plaintiff.

**E.  DEFNDANT BRAY'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIM FOR CASTING IN FALSE LIGHT, WHERE DEFENDANT BRAY REPORTED TO THE MEDIA THAT PLAINTIFF COMMMITTED GUNPOINT RAPE, EVEN THOUGH THE GUN IN QUESTION WAS ACTUALLY A TOY GUN, AND DEFENDANT BRAY HAD WITNESSED THE INCIDENT, WHICH DID NOT SHOW PLAINTIFF POSSESSING A FIREARM, MUCH LESS ACCOSTING HIS WIFE AT GUNPOINT.**

Pennsylvania courts recognize invasion of privacy as an actionable tort. **Marks v. Bell Telephone Company of Pennsylvania,** 331 A.2d 424, 430 (Pa. 1975). The Pennsylvania Superior Court has adopted the definition of invasion of privacy as described by the **Restatement (Second) of Torts Section 652(B)-E**.  **Larsen v. Philadelphia Newspapers, Inc.,** 543 A.2d 1181, 1188 (Pa.Super.Ct. 1988) (citing **Chicarella v. Passant,** 494 A.2d 1109 (Pa.Super. 1985)).   Invasion of privacy includes "four analytically distinct torts," one of which is for publicity placing a person in a false light as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if
> (a)  the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b)  the actor had knowledge of or acted in reckless disregard as to the falsity of the pubicized matter and the false light in which the other would be placed.

**Restatement (Second) of Torts** 652E (1977).   The Comments to Section **652E** explain that defamation is not a necessary element of this tort.   "It is not enough that [the plaintiff] is given unreasonable and highly objectionable publicity that

-29-

attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."   **Id. At Section 6452E, cmt. b.**   A publication may place one in a false light if its factual statements imply a falsehood, even if every individual, discrete statement is true.   **Larsen, 543 A.2d at 1189.**   The "discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in false light" may establish a claim for this tort.

The court "must initially decide whether the defamatory material was capable of being reasonably understood as intended to refer to the plaintiff.   **Harris by Harris v. Easton Publishing Company, 483 A.2d 1377, 1385 (Pa.Super.Ct. 1984)**. Integral to that determination is the appearance of the publication as a whole.   In deciding a motion to dismiss, we may consider an undisputed authentic document that a defendant to a motion to dismiss if the plaintiff's claims are based on the document.   **Pension Benefits Guaranty Corp., 998 F.2d at 1196**.

Clearly the media accounts of the criminal case against Plaintiff case him in a false light where the reporting was based on Detective Bray's affidavit of probable cause, which falsely accused Plaintiff of committing a gunpoint rape.   Defendant Bray knew that this reporting was false because he was knew that the weapon in question was a toy gun and he witnessed the sexual encounter while going through Plaintiff's cellphone, which did not include a firearm or gunpoint assault but a sexual encounter which a jury deemed to be consensual.

Accordingly, for the foregoing reasons, the   Defendant Bray's motion for summary judgment against   Plaintiff's claim for casting in false light should be denied, where Defendant acted with reckless disregard of crucial facts at his disposal

which would have discounted the veracity of the Commonwealth's

case-in-chief against Plaintiff, thereby unfairly casting Plaintiff, an innocent man, in a

false light to the public.

      F.   **DEFENDANT ADA MICHAEL RAKACZEWSKI IS ABSOLUTELY IMMUNE**

      **FROM LIABILITY UNDER THE POLITICAL SUBDIVISION TORT CLAIMS ACT,**

      **WHERE HIS ALLEGED MISCONDUCT OCCURRED IN THE COURSE OF HIS**

      **PARTICIPATION IN COURT PROCEEDINGS.**

"Prosecutors are immune from suit under section 1983 for 'initiating and

pursuing a criminal prosecution.'"   **Imbler v. Pachtman, 424 U.S. 409, 430-31**

**(1976))**.   Immunity also extends to "the preparation necessary to present a case,'

and this includes the 'obtaining, reviewing, and evaluation of evidence.'"

 **Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992) (quoting Schrob v.**

**Catterson, 948 F.2d 1402, 1414 (3d Cir. 1991).**

Not all actions of a prosecutor, however are immunized.   Instead,

"prosecutors are subject to varying levels of official immunity" and absolute

prosecutorial immunity attaches only to actions performed in a 'quasi-judicial' role,

such as participation in court proceedings and other conduct "intimately associated

with the judicial phases of litigation.   **Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir.**

**1994) (quoting Imbler, 424 U.S. at 430)**.   "By contrast, a prosecutor acting in an

investigative or administrative capacity is protected only by qualified immunity."

**Id.   (citations omitted)**.

The allegations that Defendant Rackaczewski suborned perjury, when he

coached Defendant WEbbe to change his testimony about when he returned the

phone to Defendant Bray occurred during the course of Defendant Rackaczewski's

participation in a court proceeding, thereby placing such conduct within the purview

of absolute immunity.    Accordingly, Defendant Rackaczewski is not subject to

litigation in the 1983 action and {Plaintiff moves this honorable Court to dismiss the

case against Mr. Rackaczewski.

> **G.  DEFENDANT BRAY'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES, WHERE DEFENDANT BRAY'S CONDUCT IN SWEARING OUT A FALSE AFFIDAVIT OF PROBABLE CAUSE, WHICH WAS THE BASIS FOR THE MALICIOUS PROSECUTION OF PLAINTIFF WAS EXTREME AND OUTRAGEOUS.**

Under Pennsylvania law, an award of punitive damages is justified only where

the plaintiff has established that the defendant acted "in an outrageous fashion due

to either the defendant's evil motive or his reckless indifference to others."    **Phillips**

**v. Cricktet Lighters, 883 A.2d 439, 445-46 (Pa. 2005) see also Boring v. GOogle Inc.,**

**362 Fed. Appx 273, 282 (3d Cir. 2010) Feld v. Merriam, 485 A.2d 742, 747048 (Pa.**

**1984) ("Pennsylvania law provides that a defendant must have engaged in**

**'outrageous' or intentional, reckless or malicious conduct to sustain a claim for**

**punitive damages.")**.

Clearly Plaintiff is entitled to punitive damages against Defendants Bray,

Webbe and Wagner where all three men engaged in outrageous and extreme

conduct with reckless indifference to Plaintiff.

Detective Bray went to the Media and accused Plaintiff of committing a

gunpoint Rape, even though he had the opportunity to actually observe the incident on a video downloaded on Plaintiff's IPhone 6, which did not reveal a firearm, much less a gunpoint assault, but instead showed Plaintiff and his wife kissing each other after having consensual sex and confessing their love for each other.

Detective Bray's conduct for concealing 14 audio tapes of consensual sex on Plaintiff's phone and urging Detective Webbe to falsely testify that he was not the person that texted the audio tapes to Detective Bray's phone, after conducting his forensic analysis, but that he only had the phone for a day and returned it right back to Detective Bray.   Detective Webbe's conduct in lying to cover up Detective Bray's concealment of the exculpatory evidence was equally outrageous and subjects him to punitive damages.

Finally Chief Wagner is also subject to punitive damages, for the deliberate indifference he displayed to Detective Bray's training, in retaining Detective Bray after he committed malicious prosecution and false arrest in the 2010 case of **<u>Speiss v. Mount Pocono Regional Police,</u>** and not correctiiing the conduct which Detective Bray repeated in the instant case.

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment against Plaintiff's claim for punitive damages should be denied where Defendants engaged in outrageous and extreme conduct, which evinced reckless indifference to Plaintiff's penal interest.

## V.   <u>CONCLUSION</u>

Wherefore, for, the foregoing reasons, Defendants' Motion for Summary

Judgmen, pursuant toPa.Fed.R.Civ.P. 56 and Local Rule 56.1 should be Denied.


Respectfully submitted:


 /s/ Earl Raynor_____
Earl Raynor, Esquire
PA Supreme Court I.D. No. 66849
1800 J.F.K. Boulevard
Third Floor
Box 103
Philadelphia, Pennsylvania 19103
(215)254-0299
Fax: (914)663-5116

*Counsel for Plaintiff*
*Emilio Romero*